## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | |
|---|---|
| THOMAS B. IRELAND, as Personal Representative of the ESTATE OF GREGG T. IRELAND, on behalf of the Estate and the Survivors, Karen E. Ireland and Thomas B. Ireland, | CIVIL DIVISION<br><br>Case No. 2:17-cv-468-FtM-MRM |
|       Plaintiff, | |
| v. | |
| BILL PRUMMELL, as Sheriff of Charlotte County, CORIZON LLC, a private health care corporation, and TABBATHA CARTER, BRANDON SWARTZENTRUBER, MICHAEL WILES, ROBERT SLEDZINSKI, ALAN SCHWOCHO, WILLIAM GARLICK, MICHAEL BURNETTE, ALBERT L. BURROWS, ADAMAR GONZALEZ-FIGUEROA, MARGARET BRACY, ZACKARY HEAVENER, individually, | |
|       Defendants. | |

## FIRST AMENDED COMPLAINT

Plaintiff sues defendants and alleges:

### Preliminary Statement

This is an action under federal and state law by the Personal Representative of the Estate of Gregg T. Ireland arising from Defendants' wrongful acts resulting in his death. Gregg Ireland was denied needed, prescribed, medical care during a critical period, and suffered unnecessary force, resulting in his suffering and death.

**Jurisdiction and Venue**

1.  This Court has jurisdiction under 28 U.S.C. § 1331, as this is a civil action arising under the Constitution, laws, and/or treaties of the United States; 28 U.S.C. § 1337, as this is a civil action or proceeding arising under an Act of Congress regulating commerce and/or protecting trade and commerce against restraints and monopolies; and 28 U.S.C. § 1343, as this is a civil action seeking to redress deprivation, under color of any State law, statute, ordinance, regulation, custom and/or usage, of a right, privilege or immunity secured by the Constitution of the United States.

2.  Plaintiff's claims are predicated, in part, upon 42 U.S.C. § 1983, authorizing actions to redress deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, and upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions under 42 U.S.C. § 1983.

3.  Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider the state law claims alleged herein.

4.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and § 1391(c), as the events sued upon occurred in this judicial district.

5.  Plaintiff timely served notice as required by § 768.28, Florida Statutes and all conditions precedent to this action have been performed or waived.

## Parties

6.   Plaintiff THOMAS B. IRELAND is the Personal Representative of the Estate of Gregg T. Ireland, acting on behalf of the Estate and on behalf of survivors, Karen E. Ireland, the decedent's mother, and himself, the father.

7.   At all times material hereto, Defendant CORIZON, LLC ("Corizon"), was a Tennessee Corporation contracted with the Charlotte County Sheriff, to provide medical care to his prisoners.

8.   At all times material hereto, ADAMAR GONZALEZ-FIGUEROA, ("Gonzalez") was the Jail Physician. She is sued individually.

9.   At all times material hereto, MARGARET BRACY, was a Licensed Practical Nurse at the Charlotte County Jail. She is sued individually.

10.   At all times material hereto, ZACKARY HEAVENER, was a Licensed Practical Nurse at the Charlotte County Jail. He is sued individually.

11.   At all times material hereto, BILL PRUMMELL was Sheriff of Charlotte County, an elected constitutional officer responsible for the operation of the Charlotte County Jail ("Jail"). He is sued in his official capacity

12.   At all times material hereto, TABBATHA CARTER was Watch Commander at the Charlotte County Jail. She is sued individually.

13.   At all times material hereto, BRANDON SWARTZENTRUBER, was a corrections officer at the Charlotte County Jail. He is sued individually.

14. At all times material hereto, MICHAEL WILES, was a corrections officer at the Charlotte County Jail. He is sued individually.

15. At all times material hereto, ROBERT SLEDZINSKI, was a corrections officer at the Charlotte County Jail. He is sued individually.

16. At all times material hereto, ALAN SCHWOCHO, was a corrections officer at the Charlotte County Jail. He is sued individually.

17. At all times material hereto, WILLIAM GARLICK, was a corrections officer at the Charlotte County Jail. He is sued individually.

18. At all times material hereto, MICHAEL BURNETTE, was a corrections officer at the Charlotte County Jail ("Jail"). He is sued individually.

19. At all times material hereto, ALBERT L. BURROWS, was a corrections officer at the Charlotte County Jail. He is sued individually.

20. All the above Defendants acted under color of law.

## Common Allegations of Fact

21. On August 22, 2015, at about 2:25 a.m., Gregg T. Ireland was arrested by a Charlotte County Deputy Sheriff for driving under the influence of alcohol.

22. Mr. Ireland blew .314 in a breath test at Charlotte County Jail.

23. According to Jail policy, Mr. Ireland was then taken to Charlotte Regional Medical Center (CRMC) for evaluation at about 4:30 a.m.

24. Mr. Ireland was diagnosed with alcohol abuse and hypokalemia.

25. Mr. Ireland was given 20 mEq of potassium chloride orally.

26. Mr. Ireland was prescribed 10 mEq of potassium chloride, in the form of tablets, to be taken orally every 12 hours for the next 30 days.

27. Potassium Chloride is a medication prescribed to treat hypokalemia, a potentially fatal potassium deficiency associated with alcohol withdrawal.

28. At the Jail, Mr. Ireland was placed in the infirmary for alcohol detoxification and remained there for most of August 22 and 23, 2015.

29. Jail staff and physician, Dr. Adamar Gonzalez, were notified of the prescription for Potassium Chloride but failed to administer it.

30. No jail administration staff member administered the medication.

31. Mr. Ireland never received potassium chloride medication at the jail.

32. The Jail's policy as to alcohol withdrawal was to send arrestees with a high blood alcohol level to the hospital for evaluation and to follow through with treatment based on the hospital diagnosis and prescription.

33. However, after Mr. Ireland returned from the hospital, Dr. Gonzalez and the Jail medical staff, including nurses Bracy and Heavener, failed to provide the prescribed follow-up treatment called for by hospital physicians.

34. On August 24, 2015, Mr. Ireland was housed in Dorm C, the medical unit.

35. While in the medical unit, he did not receive the prescribed medication.

36. After going without his medication, Ireland began to behave erratically.

37. Inmate Nicole Gruca, in a nearby cell, said she heard Ireland complain about an outburst by another inmate and heard a corrections officer tell Ireland, "Go ahead, please bang on the door. Give me a reason."

38. At approximately 3:20 AM, Swartzentruber, along with nurse Heavener, responded to a reported disturbance in Mr. Ireland's cell.

39. Taylor Weiser, Ireland's cellmate, told Swartzentruber that Ireland had thrown water on him and that he wished to change cells.

40. Swartzentruber said Ireland was sweating heavily and seemed anxious.

41. Swartzentruber told Ireland to move to the back of the cell so he could enter and remove Weiser's property and his "boat" a plastic shell with a mattress that sat on the cell floor and was used as a bed.

42. After some conversation, Ireland complied and Swartzentruber entered.

43. Nurse Bracy said she heard Mr. Ireland say he would help with the "boat."

44. Bracy said she heard a bang, Swartzentruber yelling, and a Taser sound.

45. Mr. Weiser said he heard Swartzentruber order Ireland to cuff up.

46. Swartzentruber fired his Taser at Mr. Ireland, hitting him in the chest.

47. Swartzentruber issued a radio call stating that a Taser had been deployed.

48. Hearing Dep. Swartzentruber's radio call, watch commander Lt. Tabbatha Carter moved to the control center to watch the events by camera.

49. Lt. Carter did not go to the jail cell to supervise her officers' actions.

50. Inmate Gruca said she heard Mr. Ireland yell that he couldn't comply.

51. Inmate Lisa Sorrels in the cell next door said she heard officers order Ireland to turn over and he answered, "I can't. I just got Tased."

52. Inmate Gruca said that eight deputies responded to the cell.

53. Gruca stated that she heard a sound from Ireland's cell "like he smacked the floor" and that not long after that sound, they Tased him.

54. Gruca said Mr. Ireland "was silent" after deputies applied straps.

55. Nurse Heavener left to get Dep. Yarzita Reyes, the desk officer on the floor.

56. Dep. Reyes was the first officer to join Dep. Swartzentruber.

57. Dep. Michael Wiles, the second officer to respond, reported seeing Dep. Swartzentruber holding a Taser and Ireland holding the Taser probes.

58. Cpl. Michael Sledzinski and Dep. Alan Schwocho soon joined deputies Swartzentruber and Wiles in Cell C-20, using force on Ireland.

59. At the arrival of deputies Sledzinski and Schwocho, Dep. Reyes returned to her desk to take control of the C Pod control panel.

60. Dep. Sledzinski retrieved the C Pod phone to communicate with Lt. Carter.

61. Dep. Wiles reported using two hand strikes to Ireland's right lower rib cage.

62. Cpl. Gary Patton Jr. reported that assistant watch commander Sgt. Robert Fout asked him to bring a set of leg irons to C Pod, which Patton did.

63. Nurses Heavener and Margaret Bracy waited outside the cell, unable to

provide medical treatment while force was being used by deputies.

64. Mr. Ireland was showing clear signs of confusion and medical distress.

65. Dep. Vanessa Chapman arrived and helped the other officers.

66. Cpl. William Garlick arrived and reported seeing Ireland on his stomach with Swartzentruber, Schwocho, Sledzinski, and Chapman holding him.

67. Dep. Michael Burnette, a member of the Jail emergency response team, arrived and saw Swartzentruber and Schwocho handcuffing Mr. Ireland while Sledzinski and Garlick put leg irons on him, with Deputies Chapman and Albert L. Burrows holding Mr. Ireland's legs.

68. Cpl. Garlick left C Pod to retrieve an Emergency Restraint Belt from the Jail Training building to assist in moving Mr. Ireland.

69. When Garlick returned at about 3:40 AM with the Restraint Belt, he assisted other deputies apply the Emergency Restraint Belt.

70. Dep. Burrows said eight corrections staff – Swartzentruber, Wiles, Chapman, Schwocho, Garlick, Sledzinski, Burnette and Patton – were all "involved in the cell area to restrain" Mr. Ireland.

71. Nurse Bracy and Cpl. Garlick rolled Mr. Ireland unto his side so as to place the Emergency Restraint Belt on him.

72. During the restraint process, Mr. Ireland was tased by deputies Swartzentruber and Sledzinski a total of nine times over nine minutes.

73. Each of these taser deployments lasted anywhere between 3 and 5 second bursts and took place between 3:38:10 AM and 3:47:12 AM.

74. At some point during these activities, Mr. Ireland became unresponsive.

75. Nurse Bracy was the only medical staff in the cell with Mr. Ireland.

76. Bracy did not take a full set of vitals but examined Mr. Ireland while sending Heavener to try to contact the Corizon doctor to authorize medication.

77. Bracy stated Mr. Ireland was alert, responsive when she left the cell.

78. Cpl. Garlick, claimed Mr. Ireland spit on officers restraining him.

79. Ireland had a spit mask placed over his head by Officer John Doe.

80. Lt. Carter ordered that Ireland be moved to C-6, a cell with a camera.

81. At 4:01 a.m., officers began moving Mr. Ireland downstairs.

82. Ireland was carried in such a way as to permit his head to strike the steps.

83. Bracy and Garlick, and a number of other corrections and medical staff members, noted a bleeding laceration on Mr. Ireland's forehead.

84. While the Emergency Restraint Belt and spit mask were being applied, Cpl. Patton moved inmates and prepped Cell C-6 to hold Ireland.

85. Nurse Heavener tried to reach Dr. Gonzalez four times without success.

86. Heavener then called his Corizon supervisor, Kim Rose, who directed him to contact physicians' assistant Sue Maurer.

87. Maurer told Heavener she could not prescribe Valium which was part of the

detoxification protocol for onset of delirium and seizures.

88. Rose directed Heavener to contact Dr. Delgado and Heavener successfully did so at approximately 4:00 AM on August 24, 2015.

89. Dr. Delgado authorized "the detox protocol Valium" and Heavener got it from the pharmacy as Ireland was being transported downstairs in restraints.

90. Because it had taken so long to reach a physician, no medication was actually given to Mr. Ireland before he departed for the hospital.

91. Nurse Heavener, along with Cpl. Garlick and deputies Burrows and Wiles, said Mr. Ireland continued to yell and struggle as he was transported.

92. Cpl. Patton said he did not notice Mr. Ireland yell or struggle.

93. Lt. Carter ordered Ireland moved again since the C-6 camera was blurry.

94. Ireland was then moved into cell C-3.

95. Inmates Sorrells and Bo Cleveland then heard loud thuds from Cell C-3.

96. As officers began removing Mr. Ireland's restraints, they noticed that he had become unresponsive and removed the spit mask.

97. Cleveland heard Cpl. Sledzinski say, "He's dead."

98. Dep. Burrows saw that Mr. Ireland had "glassy eyes", was "staring into space", and that his face had begun to look "purplish" in color.

99. Mr. Ireland had no breath or pulse.

100. Lt. Carter summoned emergency personnel at approximately 4:16 AM.

101. An oxygen mask was applied to Mr. Ireland's face.

102. Deputies Swartzentruber and Wiles and nurses Bracy and Heavener claim they performed CPR on Mr. Ireland, although he was still handcuffed.

103. Effective CPR requires the removal of cuffs, which was not done.

104. The detox protocol Valium was never given to Mr. Ireland, according to Dr. Delgado, as Mr. Ireland was taken to the hospital before this could occur.

105. Emergency personnel arrived at the Charlotte County Jail at about 4:28 AM and transported Mr. Ireland to Charlotte Regional Medical Center.

106. Once in the ER, Mr. Ireland received two rounds each of epinephrine and bicarbonate before being intubated and placed on a ventilator.

107. Doctors discovered Mr. Ireland had suffered severe anoxic organ injuries.

108. Hospital physicians told Mr. Ireland's family there was no hope of recovery.

109. Mr. Ireland was extubated at 1:10 PM on August 26, 2015.

110. Mr. Ireland died at about 2:40 PM on the afternoon of August 26, 2015.

111. Medical Examiner Dr. Suzanne Utley reported Ireland's death was caused as a result of alcohol withdrawal with heart failure.

112. Defendants' wrongful acts under color of law, proximately caused Plaintiff's decedent to suffer physical injury and death.

## Causes of Action

### I.    42 U.S.C. § 1983: Failure to Treat (Corizon)

113. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

114. Plaintiff is entitled to relief against Defendant Corizon because it violated the Fourteenth Amendment in failing to provide treatment to Mr. Ireland for a known serious medical condition during a critical period.

115. Corizon acted on a local and general company-wide policy or custom of deliberate indifference in failing to provide treatment to Mr. Ireland.

116. Corizon's failure to provide prescribed medication to Mr. Ireland was part of a widespread practice by Corizon at prison and jail facilities.

117. Corizon contracts with the Charlotte County Sheriff to provide medical care for prisoners, including prisoners who have not been convicted.

118. Corizon receives a fixed amount of money to provide care and its profits depend, in part, on minimizing the cost of the care provided.

119. Corizon has a general corporate custom and practice of delaying and minimizing medical treatment to prisoners under its care.

120. Corizon typically delays for days the administration of medication already prescribed to inmates entering the jail in order to save on medication costs.

121. Although the savings on delaying each inmate's medications may in some cases be small, the savings for thousands of prisoners is great.

122. Corizon also short-staffs medical positions at the Jail so staff are unable to pay the necessary degree of attention to the medical needs of the prisoners.

123. Corizon also hires doctors at a lower cost by making low demands on the employee doctors in terms of physical presence at the Jail or accessibility on call, so doctors have a less demanding practice or maintain other practices.

124. As a result, the doctors are often unavailable when needed, or don't respond.

125. By failing to act to abate the known risk of harm, above Defendant acted in violation of the Fourteenth Amendment to the U.S. Constitution.

126. Defendants' wrongful acts caused Mr. Ireland's suffering and death.

127. As Plaintiff has been obligated to retain legal counsel to vindicate their rights, he is entitled to attorney's fees and costs under 42 USC § 1988.

WHEREFORE, Plaintiff seeks relief as noted below.

## II.    42 U.S.C. § 1983: Failure to Treat (Gonzalez)

128. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

129. Plaintiff is entitled to relief against Defendant Dr. Adamar Gonzalez for deliberate indifference in failing to provide treatment to Mr. Ireland for a known serious medical condition in violation of the Fourteenth Amendment.

130. Although Dr. Gonzalez was made aware that Ireland was suffering from alcohol withdrawal and had a prescription for potassium chloride, she did cause the prescribed medication to be provided to Mr. Ireland.

131. Gonzalez knew of the need for follow-up care and failed to provide it or to make arrangements to make sure it would be provided to Ireland.

132. Gonzalez did not rely on medical judgment in failing to provide care.

133. Withdrawal from alcohol can result in seizures and delirium tremens, characterized by mental confusion and disorientation and death.

134. In addition to her failure to provide for Mr. Ireland's treatment at the Jail, Dr. Gonzalez failed to be accessible to handle the emergency she created.

135. Defendants' wrongful acts caused Mr. Ireland's suffering and death.

136. As Plaintiff has been obligated to retain legal counsel to vindicate their rights, he is entitled to attorney's fees and costs under 42 USC § 1988. WHEREFORE, Plaintiff seeks relief as noted below.

### III.    42 U.S.C. § 1983: Failure to Treat (Bracy, Heavener)

137. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

138. Plaintiff is entitled to relief against Defendants Bracy, and Heavener because they were deliberately indifferent in failing to treat Mr. Ireland for a known serious medical condition in violation of the Fourteenth Amendment.

139. Bracy and Heavener knew of Mr. Ireland's need for follow-up medical care, specifically potassium chloride, and failed to provide it, though able.

140. Each of the Defendants were authorized to administer the potassium chloride that had already been prescribed for Ireland but did not do so.

141. Each of the above Defendants failed to call the jail physician, Gonzalez, as soon as they saw Ireland display the known symptoms of alcohol

withdrawal, including mental confusion, anxiety, and seizure.

142. Withdrawal from alcohol can result in seizures and delirium tremens, characterized by mental confusion and disorientation and death.

143. Defendants' wrongful acts caused Mr. Ireland's suffering and death.

144. As Plaintiff has been obligated to retain legal counsel to vindicate their rights, he is entitled to attorney's fees and costs under 42 USC § 1988. WHEREFORE, Plaintiff seeks relief as noted below.

**IV.    42 U.S.C. § 1983: Deliberate Indifference (Sheriff Prummell)**

145. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

146. Plaintiff is entitled to relief against Defendant Prummell, as Sheriff, because Sheriff Prummell was deliberately indifferent to known risks of serious harm to Mr. Ireland under the Fourteenth Amendment to the U.S. Constitution.

147. Defendant Prummell had a non-delegable duty to provide medical care for prisoners which was not discharged merely by delegation to Corizon.

148. Prummell was aware that Corizon had a longstanding and widespread pattern of abuses at his Jail and in jails and prisons across the country.

149. Defendant Prummell failed to train, supervise, discipline his subordinates to ensure they did not violate the rights of persons in their charge.

150. Defendant Prummell continued to employ persons who were unfit for their employment and to endorse a code of silence at the Jail.

151. Some jail deputies, including Defendants, responded to troublesome inmates who were extra trouble because of medical issues with violence.

152. The Jail had a history of inmate abuse resulting in injury and death.

153. Defendant Prummell, as Sheriff, directly or through his chief policymakers, acting in the execution of their duty, was aware of facts that gave rise to an inference of a risk of serious harm to Mr. Ireland or others in his situation and reasonably drew the inference, yet took no action to abate the harm.

154. Prummell short-staffed his jail so that jail officers were over-stressed and more likely to act violently and were less fully supervised.

155. Prummell turned a blind eye toward unqualified or marginally-qualified officers who pick fights with inmates or use disturbances as training opportunities or opportunities to take out work-related frustrations.

156. Prummell ignored prior acts of gratuitous violence by his deputies.

157. Jail officers were not trained to understand that long, repeated Taser shocks were associated with inmate deaths in combination with other factors, or were not supervised to care about such dangers.

158. The long, sustained use of physical force by deputies predictably delayed actual medical treatment and also contributed to Mr. Ireland's death.

159. The sustained violence inflicted on Mr. Ireland contributed significantly to the stresses of delirium tremens that caused Ireland's death.

160. Prummell's wrongful acts and omissions contributed to Mr. Ireland's death.

161. As Plaintiff has been obligated to retain legal counsel to vindicate their

rights, he is entitled to attorney's fees and costs under 42 USC § 1988.

WHEREFORE, Plaintiff seeks relief as noted below.

### V.    42 U.S.C. § 1983: Excessive Force; Failure to Protect (Carter, Swartzentruber, Wiles, Sledzinski, Schwocho, Garlick, Burnette, Burrows)

162. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

163. Plaintiff is entitled to relief against Defendants Tabbatha Carter, Brandon

Swartzentruber, Michael Wiles, Robert Sledzinski, Alan Schwocho, William

Garlick, Michael Burnette, Albert L. Burrows, because they violated the

Fourteenth Amendment to the U.S. Constitution.

164. Swartzentruber, Wiles, Sledzinski, Schwocho, Garlick, Burnette, and

Burrows used force on Ireland without penological purpose, failed to

intervene to prevent abuse, though able, and interfered with medical care.

165. Swartzentruber, Wiles, Sledzinski, Schwocho, Garlick, Burnette, and

Burrows failed to protect Ireland.

166. Carter, as Watch Commander, although she was not physically present on

scene, watched the use of excessive force by monitor and had the ability, by

a word by radio, to stop the excessive force and failed to do so.

167. Swartzentruber and Sledzinski gratuitously Tased Ireland a total of nine

times over nine minutes despite the fact he did not refuse to comply.

168. Wiles repeatedly struck Ireland without a valid penological purpose.

169. Swocho, Garlick, Burnette, and Burrows used unnecessary force, interfered with medical care, and failed to intervene to prevent abuse, though able.

170. The sustained violence inflicted on Mr. Ireland contributed significantly to the stresses of delirium tremens that caused Ireland's death.

171. Defendants' wrongful acts caused Mr. Ireland's suffering and death.

172. As Plaintiff has been obligated to retain legal counsel to vindicate their rights, he is entitled to attorney's fees and costs under 42 USC § 1988.

WHEREFORE, Plaintiff seeks relief as noted below.

## VI.    Wrongful Death under State Law (Sheriff Prummell)

173. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

174. In the alternative, Plaintiff is entitled to relief against Defendant Prummell, as Sheriff of Charlotte County, under the Florida Wrongful Death Act.

175. At all times material hereto, Defendant Prummell had a legal duty to provide non-negligent care and custody to his prisoners, including Mr. Ireland.

176. Defendant Prummell breached a duty to Mr. Ireland by negligently training, supervising, and disciplining, and retaining unfit subordinates.

177. Defendant Prummell did not ensure that there was a comprehensive plan for prisoners suffering substance withdrawal.

178. Defendant Prummell did not ensure that there was a plan for timely

emergency transport of medically needy prisoners to a hospital.

179. Defendant Prummell short-staffed and over-stressed his security staff and tolerated gratuitous violence and other abuses by his officers.

180. Defendant Prummell is legally responsible for breaches of the duties of care by his agents and employees, under the doctrine of Respondeat Superior.

181. As a direct and foreseeable result of the negligent and careless acts and omissions of Defendant Prummell, Mr. Ireland suffered injury and death.

182. Gregg T. Ireland left the following Survivors under Florida law:

| Name | Address | Relationship | Birthdate (If Minor) |
|------|---------|--------------|----------------------|
| Thomas B. Ireland | 15594 Aqua Circle, Port Charlotte, FL 33981 | Father | n.a. |
| Karen E. Ireland | 15594 Aqua Circle, Port Charlotte, FL 33981 | Mother | n.a. |

WHEREFORE, Plaintiff seeks relief as noted below.

## VII.   Wrongful Death under State Law (Corizon)

183. Plaintiff re-alleges the Common Allegations as if fully set forth herein.

184. In the alternative, Plaintiff is entitled to relief against Defendant Corizon, under the Florida Wrongful Death Act.

185. At all times material hereto, Corizon had a common law duty of care to its patients, over and above any duty owed by its medical professionals.[1]

186. Defendant Corizon is legally responsible for breaches of the duties of care by his agents and employees, under the doctrine of Respondeat Superior.

---

[1] Plaintiff does not include breach of professional duties under Chapter 766, Florida Statutes.

187. Defendant Corizon breached a duty to Mr. Ireland by under-staffing and over-stressing staff, and negligently supervising, and disciplining, and negligently retaining unfit staff and tolerating staff unavailability.

188. Defendant Corizon, through its agents and employees, failed to get medication prescribed by another provider to Ireland as ordered.

189. Corizon failed to ensure staff coverage by the jail physician and failed to timely summon emergency medical team to take Ireland to the hospital.

190. As a direct and foreseeable result of the negligent and careless acts and omissions of Corizon, Mr. Ireland suffered injury and death.

191. Gregg T. Ireland left the following Survivors under Florida law:

| Name | Address | Relationship | Birthdate (If Minor) |
| --- | --- | --- | --- |
| Thomas B. Ireland | 15594 Aqua Circle, Port Charlotte, FL 33981 | Father | n.a. |
| Karen E. Ireland | 15594 Aqua Circle, Port Charlotte, FL 33981 | Mother | n.a. |

WHEREFORE, Plaintiff seeks relief as noted below.

## Damages

192. The Survivors and the Estate have sustained the following damages:

A. The Estate of Gregg Ireland has sustained the following damages:

1. Net accumulations to the Estate;

2. final expenses incurred as a result of the injuries to Mr. Ireland that have become a charge against his Estate or that were paid on his behalf;

B. The survivors of Gregg Ireland have sustained the following damages:

1. loss of support and services of their loved one;

2. mental pain and suffering from the dates of injury and continuing for the remainder of their respective lives.

## **Prayer for Relief**

WHEREFORE, plaintiff respectfully requests of the Court:

A. to take jurisdiction of this case;

B. compensatory damages for plaintiff's damages;

C. punitive damages against the individual defendants for federal counts;

D. attorney's fees and costs under 42 U.S.C. § 1988 and other laws;

E. trial by jury on all counts so triable; and

F. such other relief as the Court considers just and proper.

Respectfully Submitted,

_s/ David R. Linn_                             _s/James V. Cook_
DAVID R. LINN, FBN 0254411          JAMES V. COOK, FBN 0966843
David R. Linn, Attorney at Law, P.A.   Law Office of James Cook
1777 Tamiami Trail  #103                 314 West Jefferson Street
Port Charlotte, FL 33948-1064           Tallahassee, FL 32301
(941) 766-0600; (941) 766-1968 fax   (850) 222-8080; 561-0836 fax
drlinn@davidrlinn.com,                    cookjv@gmail.com
cbenoit@davidrlinn.com
drlcourtdocuments@davidrlinn.com    Attorneys for Plaintiff

I CERTIFY a true copy hereof was served 12/20/17 on all counsel of record registered with the CM/ECF electronic filing system.

_/s/James V. Cook_