UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THOMAS B. IRELAND, as personal
representative of the estate of Gregg T.
Ireland, on behalf of the estate and the
survivors, Karen E. Ireland and Thomas
B. Ireland

        Plaintiff,

v.                                  Case No:  2:17-cv-468-FtM-38MRM

BILL PRUMMELL, CORIZON LLC,
TABBATHA CARTER, BRANDON
SWARTZENTRUBER, MICHAEL
WILES, ROBERT SLEDZINSKI,
ALAN SCHWOCHO, WILLIAM
GARLICK, MICHAEL BURNETTE,
ALBERT L. BURROWS, ADAMAR
GONZALEZ-FIGUEROA,
MARGARET BRACY and ZACKARY
HEAVENER,

        Defendants.

_____/

## OPINION AND ORDER[1]

On August 26, 2015, Gregg Ireland (Ireland), who was a pretrial detainee in the

Charlotte County Jail, died from alcohol withdrawal with heart failure.  Thomas Ireland,

the personal representative of the Estate of Ireland, filed an Amended Complaint (Doc.

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

27) containing the following seven counts against thirteen defendants: (I) 42 U.S.C. § 1983 for failure to treat against Corizon, the contracted medical provider for Charlotte County Jail; (II) 42 U.S.C. § 1983 for failure to treat against Dr. Gonzalez, the jail physician; (III) 42 U.S.C. § 1983 for failure to treat against Bracy and Heavener, the licensed practical nurses at the jail; (IV) 42 U.S.C. § 1983 for deliberate indifference by Charlotte County Sheriff Prummell; (V) 42 U.S.C. § 1983 for excessive use of force and failure to protect against Carter, Swartzentruber, Wiles, Sledzinski, Schwocho, Garlick, Burnette, and Burrows, the watch commander and deputies at the jail, respectively; (VI) wrongful death under State law against Sheriff Prummell; and (VII) wrongful death under State law against Corizon.

The case is before the Court on the following motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim:

- Defendant Michael Burnette's Motion to Dismiss (Doc. 29, filed January 3, 2018);

- Defendant Sheriff's Motion to Dismiss Counts IV of VI of Amended Complaint (Doc. 30, filed January 3, 2018);

- Defendants Carter, Swartzentruber, Wiles, Sledzinski, Schwocho, Garlick, and Burrows' Motion to Dismiss Count V of Amended Complaint (Doc. 31, filed January 3, 2018);

- Defendants Corizon, Health, Inc., Adamar Gonzalez-Figueroa, Zackary Heavener, and Margaret Bracy's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 32, filed January 3, 2018).

Plaintiff filed an Omnibus Response to all Defendants' Second Motions to Dismiss Complaint (Doc. 33). Defendants Corizon, Gonzalez-Figueroa, Heavener, and Bracy filed a Reply (Doc. 38). Upon review, the Court concludes that the Defendants' motions are due to be denied.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) must be read in conjunction with the pleading rules set forth in Rule 8, which requires a pleading to "contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court reads Rule 8(a)(2) to require that a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible* on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added). The plausibility standard is not analogous to a "probability requirement," but it does require more than a sheer possibility that a defendant has acted unlawfully. *Id*. at 556. A claim is *plausible* when "the pleaded factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the facts need not be detailed, they must "raise a reasonable expectation that discovery will reveal evidence" in favor of the plaintiff's claim. *Twombly*, 550 U.S. at 556. The issue is whether the plaintiff has provided enough information to proceed to discovery– not whether the plaintiff will win his case. *Ashcroft*, 556 U.S. at 678-79. Once the plaintiff has reached discovery, he can collect evidence that will help him win his case. *Id.*

Whether a plaintiff can survive a Rule 12(b)(6) Motion is "a content-specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Id.* at 679 (citations omitted). Clearly, "unadorned, the-defendant-unlawfully-harmed-me-accusations" are not enough to proceed to discovery. *Id.* at 678 (citations omitted). And, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" alone are insufficient because every legal conclusion pled must be supported by factual allegations. *Id.* (citations omitted). Without enough factual allegations to raise a reasonable expectation of relief, dismissal is warranted under Fed. R. Civ. P. 12(b)(6). *Id.*

The Court must accept as true the facts as alleged in a complaint, but not the legal conclusions couched as facts. *Twombly*, 550 U.S. at 555. Further, the Court will "not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss." Financial Security Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007) (citing Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1368 (11th Cir. 1997)).

## FACTUAL ALLEGATIONS IN AMENDED COMPLAINT

The Court considers *only* the facts as alleged in the Amended Complaint as the operative facts for considering the various dispositive motions. At 2:25 am on August 22, 2015, a Charlotte County Deputy arrested Ireland for driving under the influence of alcohol. Doc. 27 at ¶ 21. At the jail, Ireland blew .314 in a breath test and was transported to the Charlotte County Medical Center (CCMC) where he was evaluated and diagnosed at 4:30 am with alcohol abuse and hypokalemia, "a potentially fatal potassium deficiency associated with alcohol withdrawal." *Id.* at ¶¶ 22-24, 27. CCMC administered 20 mEq of potassium chloride to Ireland and prescribed that Ireland be administered 10 mEq of potassium chloride every 12 hours for 30 days. *Id.* at ¶¶ 25-26.

Ireland was taken back to the jail and placed in the infirmary for alcohol detoxification for the remainder of August 22 and 23. *Id.* at ¶ 28. Jail staff and Dr. Gonzalez were notified that Ireland was prescribed potassium chloride, but no member of the medical staff administered the prescribed treatment to Ireland, either while in the infirmary or two-days after when he was moved to Dorm C in the medical unit. *Id.* at ¶¶ 29-35.

After his move to Dorm C, Ireland "began to behave erratically." *Id.* at ¶ 36. Inmate Gruca heard Ireland complain about another inmate's outburst and an unidentified correctional officer tell Ireland "Go ahead, please bang on the door. Give me a reason." *Id.* at ¶ 37. At 3:20 am, Correctional Officer Swartzentruber and Nurse Heavener responded to a reported disturbance at Ireland's cell. *Id.* at ¶ 38. Ireland's cellmate, Inmate Weiser, told Swartzentruber that Ireland had thrown water on him and requested a cell change. *Id.* at ¶ 39. Swartzentruber said "Ireland was sweating heavily and seemed nervous." *Id.* at ¶ 40. After Swartzentruber entered the cell to remove Inmate Weiser's property, the sequence of events is unclear. Nurse Bracy heard Ireland tell Swartzentruber that he would help move Inmate Weiser's "boat,"[2] then she heard a "bang" and Swartzentruber "yelling, and a taser sound." *Id.* at ¶¶ 41-44. Swartzentruber hit Ireland with his Taser in the chest and issued a radio call stating that his Taser had been deployed. *Id.* at ¶¶ 46-47. Inmate Weiser heard Swartzentruber order Ireland to cuff up. *Id.* at ¶¶ 45. Inmate Gruca heard Ireland yell "he couldn't comply." *Id.* at ¶ 50.

Upon hearing Swartzentruber's radio call that he deployed his taser, watch commander Carter moved to the control center to watch the events by camera. *Id.* at ¶

---

[2] A plastic shell with a mattress that sits on the cell floor used as a bed.

48.  Inmate Gruca reported that eight officers responded to the cell, and inmate Sorrels heard Ireland in response to being ordered to turn over say "I can't.  I got Tased."  *Id.* at ¶¶ 51-52.  Not including himself, Deputy Burrows identified the eight additional correctional officers "involved in the cell area to restrain" Ireland as: Swartzentruber, Wiles, Chapman, Schwocho, Garlick, Sledzinski, Burnette and Patton.  *Id.* at ¶ 70.  Deputies Wiles, Sledzinski and Schwocho used force on Ireland.  *Id.* at ¶ 58.  Wiles reported "using two hand strikes to Ireland's right lower rib cage."  *Id.* at ¶ 61.  Swartzentruber, Sledzinski, Schwocho, Garlick, and Burrows applied handcuffs and leg irons to Ireland, while Chapman and Burrows held Ireland's legs.  *Id.* at ¶ 67.  Garlick and other officers applied the emergency restraint belt.  *Id.* at ¶ 68.  Over a nine-minute period, from 3:38 am until 3:47 am, Swartzentruber and Sledzinski tased Ireland nine times, with each deployment lasting between 3-5 seconds.  *Id.* at ¶¶ 72-73.

Nurses Heavener and Bracy remained outside the cell during the use of force process during which Ireland showed "clear signs of confusion and medical distress".  *Id.* at ¶¶ 63-64.  Ireland became unresponsive, and Nurse Bracy examined Ireland while Nurse Heavener attempted to contact a doctor.  *Id.* at ¶¶ 74-76.  Nurse Heavener "tried to reach Dr. Gonzalez four times without success".  *Id.* at ¶ 85.  Nurse Heavener called his supervisor who "directed him to contact physicians' assistant Sue Maurer."[3]  *Id.* at ¶ 86.  Ms. Maurer stated that she could not prescribe medication, but she recommended "the detox protocol Valium."  *Id.* at ¶ 87.  Valium is an alcohol detoxification medication used for delirium and seizures associated with alcohol withdrawal.  *Id.*  Nurse Heavener

---

[3] It is not clear whether Ms. Maurer is a certified Physician Assistant or the assistant to Dr. Gonzalez.

called his supervisor again who directed him to contact another doctor.  *Id.* at ¶ 88.  Nurse Heavener reached Dr. Delgado at 4:00 am who prescribed "the detox protocol Valium" and he retrieved it from the pharmacy.  *Id.*

During Nurse Heavener's absence, Ireland became alert and responsive.  *Id.* at ¶ 77.  Garlick "claimed" Ireland began spitting at officers, and deputy "John Doe" placed a "spit mask" on Ireland.  *Id.* at ¶¶ 78-79.  At 4:01 am, officers began to move Ireland to a different cell, C-6, with a better camera as ordered by Carter.  *Id.* at ¶ 80.  Ireland was transported "in such a way as to permit his head to strike the steps."  *Id.* at ¶ 82.  Correctional officers and medical staff "noted a bleeding laceration" on Ireland's forehead.  *Id.* at ¶ 83.  The facts are in dispute as to whether Ireland was yelling and struggling during transport.  *Compare id.* at ¶ 91 and ¶ 92.  Carter ordered Ireland moved again because the camera in C-6 "was blurry" so he was moved to cell C-3.  Inmates Sorrells and Cleveland "heard loud thuds from cell C-3."  *Id.* at ¶ 95.  After removing the restraints, officers noticed Ireland was unresponsive and they removed the spit mask.  *Id.* at ¶ 96.  Ireland "had no breath or pulse;" his face was "purplish", and his eyes were "glassy" and "staring into space."  *Id.* at ¶¶ 98-99.  At approximately 4:16 am, Carter called emergency personnel.  *Id.* at ¶ 100.  Nurse Heavener, Swartzentruber, Wiles, and Nurse Bracy "claimed" they performed CPR on Ireland while he was still handcuffed.  *Id.* at ¶ 102.  Emergency personnel arrived at the jail at 4:28 am.  *Id.* at ¶ 105.  Nurse Heavener never administered the detox Valium protocol prescribed by Dr. Delgado.  *Id.* at ¶ 104.  At the hospital, Ireland was intubated, placed on a ventilator, and diagnosed with "severe anoxic organ" injuries.  *Id.* at ¶¶ 106-07.  Ireland was extubated at 1:10 pm on August 26, 2015

and died at 2:40 pm that same day.  *Id.* at ¶ ¶ 109-110.  The medical examiner reported

the cause of Irelands' death as alcohol withdrawal and heart failure.  *Id.* at ¶ 111.

**APPLICABLE LAW AND DISCUSSION**

**A.  § 1983 Deliberate Indifference to Serious Medical Condition Against
Corizon (Count I) and Defendants Dr. Gonzalez-Figuero (Count II), Nurse
Heavener and Nurse Bracey (Count III)**

As a pre-trial detainee, Ireland's rights arise from the due process clause of the

Fourteenth Amendment, but his claims are subject to the same scrutiny as deliberate

indifference claims under the Eighth Amendment.  *See Mann v. Taser Int'l, Inc.*, 588 F.3d

1291, 1306 (11th Cir. 2009).  In order to raise an Eighth Amendment, claim for deliberate

indifference, a plaintiff must allege "acts or omissions sufficiently harmful to evidence

deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106

(1976).  More specifically, plaintiffs must allege: (1) "an objectively serious medical need

that, if left unattended, poses a substantial risk of serious harm", and (2) "an objectively

insufficient response" that was "poor enough to constitute an unnecessary and wanton

infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or

treatment, or even medical malpractice actionable under state law."  *Dennis v. Warden,

Ware State Prison*, 648 Fed. Appx. 918, 920 (citations omitted).  For Eighth Amendment

purposes, the "medical need of the prisoner need not be life threatening."  *Washington v.

Dugger,* 860 F.2d 1018, 1021 (11th Cir.1989).  In addition, each individual defendant

must: (3) "be aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists," and (4) "must also draw the inference."  *Harper v. Lawrence

Cnty., Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010) (citations omitted).  "Imputed or

collective knowledge cannot serve as the basis for a claim of deliberate indifference.

Each individual Defendant must be judged separately and on the basis of what that person knows." *Id.* (alterations and citations omitted).

The Court finds that the Amended Complaint adequately states a claim for deliberate indifference under the Fourteenth Amendment. The Amended Complaint avers that Ireland was diagnosed with alcohol abuse and hypokalemia. Doc. 27 at ¶ 24. "Hypokalemia, a potentially fatal potassium deficiency associated with alcohol withdrawal" if left untreated constitutes a serious medical need that poses a substantial risk of harm. "This Circuit has stated that its prior cases 'established that a jail official who is aware of but ignores the dangers of acute alcohol withdrawal and waits for a manifest emergency before obtaining medical care is deliberately indifferent to the inmate's constitutional rights.' *Harper v. Lawrence County, Alabama*, 592 F.3d 1227, 1235 (11th Cir. 2010) (quoting *Lancaster v. Monroe County, Ala.,* 116 F.3d 1419, 1426 (11th Cir.1997)). The Court can reasonably infer that Ireland's physical deterioration and eventual death was not "mere negligence" or "accidental inadequacy" because the Amended Complaint avers that Ireland's "potentially fatal" condition was known to medical staff and wholly left untreated after his return from CCRMC.

Corizon

Corizon seeks dismissal of Count I on the basis that the Amended Complaint alleges "unofficial policies" but fails to include "sufficient facts of widespread problems to allow a conclusion that Corizon's policies were unconstitutional." Doc. 32 at 14. Corizon argues that the policies identified in the Amended Complaint are "vague" and "conclusory." *Ibid.* Further, it claims that the amended Complaint fails to allege causation between the alleged policies and Ireland's death." *Id.* at 14-15. Finally, Corizon disputes

that potassium chloride is a medication, and instead characterizes it as a "nutritional supplement." *Id.* at 15.

In Count I of the Amended Complaint, Plaintiff asserts a Fourteenth Amendment claim of deliberate indifference against Corizon based on allegations that Corizon promulgated "general company-wide polic[ies]" and "widespread practices" that resulted in the failure to provide prescribed medication to Ireland. Doc. 27 at ¶¶ 115-16. Plaintiff contends that Corizon provides care for a "fixed amount of money" and its profits depend, in part, on minimizing the cost of the care provided." *Id.* at ¶ 118. According to the Amended Complaint, Corizon "has a general corporate custom and practice of delaying and minimizing medical treatment for prisoners." *Id.* at ¶ 118. Specifically, Plaintiff avers that Corizon: (1) delays giving inmates "prescribed medications for days," (2) "short-staffs" medical personnel at the Jail, and (3) "hires doctors at a lower cost by making low demands" on doctors. *Id.* at ¶¶ 119, 122, 123. More particularly, Plaintiff contends that Corizon does not require medical personnel to be physically present at the jail or "accessible on call." *Id.* at ¶ 123. The Amended Complaint alleges that Corizon failed to "abate the known risk of harm" and these "wrongful acts" caused Ireland's suffering and death. *Id.* at ¶¶ 125-126.

Corizon, although a private entity, may be held liable under § 1983 because it was tasked with providing medical care to inmates and detainees in the Charlotte County Jail, which is a "function traditionally within the exclusive prerogative of the state." *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). Nonetheless, because it is a corporate entity, the *Monell*[4] policy or custom requirement applies. *Ibid.* Thus, Plaintiff must allege facts

---

[4] *Monell v. Dep't of Social Servs. Of New York*, 436 U.S. 658, 690-91 (1978).

that Corizon "had a 'policy or custom' of deliberate indifference that led to the violation of his constitutional right." *Craig, v. Floyd Cty.*, 643 F.3d 1306, 1310 (11th Cir. 2011). "Because a [corporation] rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs. . . must show that the [corporation] has a custom or practice of permitting it and that the [corporation's] custom or practice is 'the moving force [behind] the constitutional violation.' " *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1330 (11th Cir. 2003) (citations omitted, and alterations added). Thus, for Corizon to be liable, Plaintiff must identify a policy or practice which was "the moving force" behind injury or harm to Plaintiff. *See Fields v. Corizon Health, Inc.*, 490 F. App'x. 174, 183-85 (11th Cir. 2012). And, there must be "a direct causal link between the policy or custom and the alleged constitutional deprivation." *Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

Here, Plaintiff alleges that Corizon had a policy or custom of delaying the administration of medications, not requiring doctors to be physically present at the jail or accessible on-call to save money and increase profits. The Amended Complaint states that the actions of Corizon's employees were consistent with, and proof of, the policy or custom. In particular, medical staff did not administer potassium chloride to Ireland in compliance with Corizon's alleged policy of withholding medication for days. *Id.* at ¶ 116. And, Ireland never received the Valium treatment for alcohol withdrawal because Nurse Heavener "took so long to reach a physician" by telephone. *Id.* at ¶¶ 85, 90, 124. Conceivably, Corizon's under-staffing and low employee demands contributed to Nurse Heavener's struggle to reach a doctor that evening. Finally, a jury can reasonably infer that either one or the combination of these alleged policies or were directly and causally

linked to Ireland's erratic behavior and ultimate death.  Thus, the Court finds that Count I of the Amended Complaint sufficiently states a § 1983 claim against Corizon to withstand a motion to dismiss.[5]

Dr. Gonzalez

Dr. Gonzalez seeks the dismissal of Count II of the Amended Complaint on the basis that she was not "constitutionally compelled to follow [the hospital's] treatment instead of her own judgment."  Doc. 32 at 17.  Additionally, Dr. Gonzalez argues she did not have subjective knowledge that Ireland "collapsed" and cannot be liable for failing to answer Nurse Heavener's call because nothing "more could have been done if Gonzalez answered the call."  *Id.* at 18.

Count II of the Amended Complaint asserts that Dr. Gonzalez was deliberately indifferent to Ireland's known serious medical need on the basis that she "was made aware that Ireland was suffering from alcohol withdrawal," "had a prescription for potassium chloride," and failed to ensure that it was administered, or any other "follow-up care" was provided.  Doc. 27 at ¶¶ 129-131.  Additionally, the Amended Complaint predicates liability on Dr. Gonzalez for her failure to be accessible to handle "the

---

[5] Corizon appears to suggest that Plaintiff cannot "merely identify a policy" without citing multiple incidents to establish the existence of that policy.  *See* Doc. 32 at 11.  This case is in the initial pleading stage.  Although Plaintiff will need to cite an "official policy" or prove the existence of a "widespread practice" in summary judgment or at trial, it would place quite an unreasonable burden on plaintiffs to meet these standards of proof before discovery.  *See Ashcroft*, 556 U.S. at 678-79.  Indeed all but one of the cases cited by Corizon address Rule 56 or Rule 59 Motions.  Only *Harvey v. City of Stuart*, 296 Fed. App'x 824, 826 (11th Cir. 2008) addresses a Rule 12(b)(6) motion.  Contrary to Corizon's claims, the plaintiff in *Harvey* was subject to a motion to dismiss because the complaint did not allege any custom, policy, or practice.  *Id.*

emergency she created." *Id.* at ¶ 134. Count II alleges that these "wrongful acts" caused Ireland's suffering and death. *Id.* at ¶ 135.

The Court finds that the Amended Complaint adequately states a claim for deliberate indifference under the Fourteenth Amendment against Dr. Gonzalez. As noted above, the Eleventh Circuit has established that a prison official "who is aware of but ignores the dangers of acute alcohol withdrawal and waits for a manifest emergency before obtaining medical care is deliberately indifferent to the inmate's constitutional rights." *Harper*, 592 F.3d at 1235. The Amended Complaint clearly alleges that Dr. Gonzalez was aware of Ireland's diagnosis of hypokalemia and alcohol abuse and failed to render any treatment. Further, whether Dr. Gonzalez's decision not to administer the potassium chloride was a difference in medical judgment or a failure to treat is a question of fact. Consequently, the Amended Complaint adequately states a plausible claim against Dr. Gonzalez for deliberate indifference.

<u>Nurse Bracy and Nurse Heavener</u>

Defendants Bracy and Heavener similarly contend that the Amended Complaint fails to state a claim against them. Doc. 32 at 18. They argue "there are no allegations Heavener or Bracy had any indication that Gonzalez needed to be called prior to when the call was made." *Id.* Once again, Defendants claim that potassium chloride is "just a vitamin," and Plaintiff's claim that Heavener or Bracy could administer potassium chloride "without an order from someone authorized to do so is absurd." *Id.*

Count III of the Amended Complaint asserts that Nurse Bracy and Nurse Heavener were deliberately indifferent to Ireland because they both knew that Ireland needed "follow-up medical care, specifically potassium chloride," and "were authorized" to

administer the treatment prescribed by CCRMC but failed to do it. *Id.* at ¶¶ 138-140. Additionally, the Amended Complaint faults Nurse Bracy and Heavener for failing to call Dr. Gonzalez "as soon as they saw Ireland display the known symptoms of alcohol withdrawal, including mental confusion, anxiety, and seizure". *Id.* at ¶ 141. According to the facts in the Amended Complaint, Nurses Bracy and Heavener were present and outside Ireland's cell during the use of force incident when he "was showing clear signs of confusion and medical distress." Doc. 27, ¶¶ 63-64. Count III avers that all of these "wrongful acts" caused Ireland's suffering and death. *Id.* at ¶ 143.

Contrary to factual averments in Defendants' motion, the Amended Complaint avers that both Nurse Heavener and Nurse Bracy "were authorized to administer" the treatment prescribed by the hospital but neither administered the treatment. Even though Nurses Bracy and Heavener argue that they "call[ed] physicians when [Ireland's] condition changed," the Amended Complaint avers that they performed these acts only after Ireland's condition deteriorated to the point where he was unresponsive.

According to the facts in the Amended Complaint, both Nurses Bracy and Heavener were in the medical unit when Ireland started showing signs of erratic behavior, both watched Ireland get tazed nine times – before he became unresponsive, and Nurse Bracy assisted jail officials with placing an emergency belt on Ireland and entered the cell after Ireland became unresponsive the first time, but did not take his vital signs. The facts reasonably suggest that Ireland was displaying serious symptoms of alcohol withdrawal, and a reasonable jail official – let alone a nurse – could deduce that Ireland was at risk of serious harm. Consequently, the Court finds that the Amended Complaint adequately

states a plausible claim for deliberate indifference under the Fourteenth Amendment against Nurses Bracy and Heavener.  *See Harper*, 592 F.3d at 1235.

### B.  Wrongful Death Under State Law Against Corizon (Count VII)

Corizon seeks to dismiss Count VII of the Amended Complaint for Ireland's failure to comply with conditions precedent to Florida's Medical Malpractice Act, contained in Chapter 766, Florida Statutes.  Doc. 32 at 19-23.  Corizon argues that Plaintiff's wrongful death claim "arises out of alleged negligent medical treatment" and thus falls within the purview of Chapter 766.

According to the Amended Complaint, Corizon had a duty of care to its patients independent of the duty of care owed by its medical professionals.  Doc. 27, ¶ 185.  By footnote, Plaintiff states his claim "does not include breach of professional duties under Chapter 766, Florida Statues."  *Id.*, fn.1.  The Amended Complaint then identifies various deficiencies attributable to Corizon, including under-staffing, failing to administer already prescribed medication, failing to ensure coverage by a jail physician, and failure to timely summon an emergency team, *inter alia*.  Id., ¶¶ 187-189.

Claims "arising out of the rendering of, or the failure to render, medical care or services," are subject to the pre-suit screening requirements of Chapter 766, Florida Statues.  S*ee* Fla. Stat. 766.106(2)(a); *Corbo v. Garcia,* 949 So.2d 366, 368 (Fla. 2d DCA 2007).  "Not every alleged act of wrongdoing by a healthcare provider, or its employees, amount to medical malpractice.  The alleged wrongful act must be directly related to the improper application of medical services to the patient and the use of professional judgment or skill."  *Pomper v. Ferraro*, 206 So.3d 728, 731 (Fla. 4th DCA 2016) (citations omitted).  A plaintiff is not barred from asserting an ordinary negligence claim if he does

not rely on the medical negligence standard of care. *Feifer v. Galen of Fla., Inc.,* 685 So.2d 882, 885 (Fla. 2d DCA 1996). At this stage, the Court cannot conclude that all of Corizon's alleged deficiencies necessarily involve the "application of medical services and the use of professional judgment or skill." Accepting the allegations as true, the Court denies Corizon's motion to dismiss Count VII at this stage of the proceedings.[6]

### C. § 1983 Excessive Use of Force; Failure to Protect Against Carter, Swartzentruber, Wiles, Sledzinski, Schwocho, Garlick, Burnett,[7] Burrows (Count V)

The Amended Complaint sues the deputy defendants in their individual capacities. Doc. 27, ¶¶ 12-19. Count V of the Amended Complaint alleges both an excessive use of force and failure to protect claim against Swartzentruber's, Wiles, Sledzinski, Schwocho, Garlick, Burnett, and Burrows, and a failure to protect claim against Carter. *Id.*, ¶¶ 164-166. The deputy defendants move to dismiss Count V for failing to state a claim in their individual capacities for excessive use of force. Doc. 31 at 2, Doc. 29 at 2. Notably, none of the deputy defendants discuss the failure to protect claim asserted by Plaintiff. Defendants also assert they are entitled to qualified immunity on the excessive use of force claim because they were performing discretionary functions and generally claim that the Amended Complaint fails to contain sufficient facts sufficient to overcome the defense of qualified immunity. Doc. 31 at 11, Doc. 29 at 12.

---

[6] According to the Amended Complaint, "Plaintiff timely served notice as required by § 768.28, Florida Statutes and **all conditions precedent to this action have been performed or waived**." Doc. 27, ¶ 5 (emphasis added). While a plaintiff must plead compliance with section 768.28(6)(a) by a general averment, *see Wagatha v. City of Satellite Beach*, 865 So.2d 620, 622 (Fla. 5th DCA 2004), nothing in section 766.106 requires that a plaintiff affirmatively plead compliance. Consequently, this issue may be better suited for summary judgment.

[7] Defendant Burnett filed a separate motion. See Doc. 29.

In an excessive use of force claim as a pretrial detainee, Plaintiff must show only that the force purposely or knowingly used against him was objectively unreasonable. *Kingsley v. Hendrickson*, __ U.S. __, 135 S.Ct. 2466, 2468 (June 22, 2015). The objective-reasonableness determination must be made "from the perspective of a reasonable officer on the scene." *Id.* at 2473. This is not a mechanical standard but requires the court (or jury) to assess the "facts and circumstances of each particular case." *Ibid.* Although not exhaustive, the Supreme Court identifies the following as relevant in considering whether the force was reasonable: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Ibid.*

An officer may be liable under § 1983 for failing to intervene when a fellow officer uses excessive force if he "is present at the scene" and "fails to take reasonable steps to protect the victim." *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002) (quoting *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441-42 (11th Cir. 1985)). "Therefore, an officer who is present at such a beating and fails to intervene may be held liable though he administered no blow." *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1342 (11th Cir. 2007) (*per curiam*). "This liability, however, only arises when the officer is in a position to intervene and fails to do so." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924-25 (11th Cir. 2000) (finding officer who was in "voice contact" with other officer had opportunity to intervene by ordering another officer to restrain dog).

Accepting the allegations in the Amended Complaint as true, the Court finds the Amended Complaint plausibly states a § 1983 claim against each of the named deputies for their participation in the continuum use of force or for their failure to intervene in the use of force. The Court cannot reasonably infer that Ireland posed any security threat, yet alone a severe security threat. Ireland was arrested for driving under the influence, a nonviolent offense, and was housed in the medical unit for alcohol detoxication. The use of force was precipitated by Ireland's cellmate requesting a cell change because Ireland threw water on him.[8] When Swartzentruber and Nurse Nurse Heavener arrived at the cell, Ireland was exhibiting signs of alcohol withdrawal— "Ireland was sweating heavily and seemed anxious." See Doc. 27, ¶ 40. Ireland complied with Swartzentruber's command to move back but then offered to help move the boat and was tased by Swartzentruber. Ireland did not refuse to comply with the correctional officer's further commands, he was unable to comply due to the tasing. The facts as alleged indicate that there was no effort to restrain the use of force. Indeed, after Swartzentruber's initial use of force, eight additional officers, including Wiles, Sledzinski, Schwocho, Garlick, Burnett, and Burrows responded and were "involved in the cell area to restrain" Ireland. *Id.*, ¶ 70. This force included applying handcuffs (Swartzentruber and Schwocho), leg irons (Sledzinski and Garlick), a restraint belt (Garlick), a spit mask, strikes to Ireland's lower rib cage (Wiles), smacking Ireland to the floor, nine additional tasings over nine-minutes (Swartzentruber and Sledzinski), and transporting Ireland in such a manner as to cause a laceration to his head. The force on Ireland escalated until he became unresponsive a

---

[8] The Court notes the Amended Complaint references an earlier invitation to use force by an officer, *see* Doc. 27, ¶ 37, but the threat is not attributed to any of the named defendants.

second time and stopped breathing. Only defendant Carter was not physically present during the use of force event. Instead, as the watch commander, defendant Carter chose to view the events unfold by camera from the control center and radioed officers only to suggest moving Ireland twice to different cells, so she could get a better view. The Amended Complaint is devoid of allegations that any of the individual defendants, including defendant Carter, took any action to intervene in the ongoing unreasonable use of force against Ireland.

At this stage of the proceedings, the Court is not required to parse out at what point the force became excessive or the level of involvement by any defendant. Arguably, on the face of the Amended Complaint Ireland took no action that warranted the initial tasing and each of the named deputies were present throughout the ordeal and took no affirmative act to stop the continuum of force. Consequently, accepting Plaintiff's version of facts, the Court finds that the Amended Complaint plausibly states a Fourteenth Amendment claim against each of the deputy defendants.

Plaintiff does not dispute that the deputy defendants were acting in their discretionary authority. The Court finds that Defendants, nonetheless, are not entitled to qualified immunity at this stage of the pleadings based upon Plaintiff's version of the facts. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Shuford v. Conway*, 666 F. App'x 811, 816 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 2196, 198 L. Ed. 2d 256 (2017). *Kingsley's* 2015 objective unreasonable ruling was issued before the incident in question. Even before *Kinglsey*, the Eleventh Circuit made clear that certain conduct steps over the "line of

constitutionally permissible conduct." *Ort v. White*, 813 F.2d 318, 325- 327 (11th Cir. 1987) (finding a constitutional violation "occurs in this context where prison officers continue to employ force or other coercive measures after the necessity for such coercive action has ceased." *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008) (holding "[w]hen jailers continue to use substantial force against a prisoner who has clearly stopped resisting—whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated—that use of force is excessive.").

Because none of the deputy defendants discuss the failure to protect claim in their dispositive motions the Court need not analyze whether they are entitled to qualified immunity, but recognizes that the state of law regarding whether an officer has a duty to intervene in an excessive use of force case was well established at the time of the events in question. *See Skritich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002).

### D.  § 1983 Deliberate Indifference Against Sheriff Prummel (Count IV)

The Amended Complaint sues Sheriff Prummel in his official capacity. Doc. 27, ¶ 11.  Defendant Prummel argues that Plaintiff has not sufficiently alleged an underlying constitutional violation or a custom or policy behind the underlying constitutional violation. Doc. 30 at 2, 7.

A claim against Sheriff Prummell in his official capacity is deemed to be against the municipal entity, Charlotte County. *See Kentucky v. Graham,* 473 U.S. 159, 165 (1985) (a suit against government officer in his official capacity is the same as a suit "against [the] entity of which [the] officer is an agent" (quoting *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690 n. 55 (1978)).  A municipal entity may be sued under § 1983 only where (1) there is an underlying constitutional violation; and (2) the municipal entity

itself had in place a custom or policy that violated the plaintiff's rights. *Monell,* 436 U.S. at 690–91.

The Court has determined that the Amended Complaint has alleged sufficient facts to state a § 1983 constitutional violation for deliberate indifference to medical care, excessive use of force and failure to protect. The Court turns to whether the Amended Complaint contains allegations that the Sheriff had a policy or custom for which liability can attach in his official capacity.

Plaintiff avers that Sheriff Prummell "was aware that Corizon had a longstanding and widespread pattern of abuses at his Jail and in jails and prisons across the country." Doc. 27, ¶ 148. Plaintiff then avers, *inter alia*, that Sheriff Prummell failed "to train, supervise, discipline his subordinates," continued to employ unfit persons and "endorse a code of silence" at the Jail, had a history of inmate abuse that resulted in injury and death, short-staffed his jail, which caused officers to act violently, "turned a blind eye" toward "officers who pick fights with inmates," "ignored prior acts of gratuitous violence," and failed to train officers of the dangers of long, repeated Taser shocks." *Id.*, ¶¶ 149-157. The Court finds these factual allegations sufficiently allege a policy or practice which violated Ireland's rights at the notice stage of pleading to withstand a motion to dismiss.

### E. Wrongful Death Under State Law Against Sheriff Prummell (Count VI)

In Count VI, Plaintiff seeks to hold Sheriff Prummell liable for the acts of his employees under a breach of duty and theory of *respondeat superior*. Doc. 27, ¶¶ 175,180. The Amended Complaint identifies the following duties allegedly breached by the Sheriff that resulted in Ireland's suffering and death, such as: negligent training, supervising, discipling and retaining unfit officers; failing to ensure there was a

comprehensive plan for prisoner's suffering from substance withdrawal; failing to ensure there was timely emergency transport for medical needy prisoners; short staffing resulting in over stressed staff; and tolerating abuses by his officers. *Id.*, ¶¶176-179. Sheriff Prummell seeks dismissal of Count VI as barred by sovereign immunity.

The State of Florida, its subsidiaries and municipalities, are generally immune from tort liability. *See* Fla. Const., Art. X, § 13. However, Florida has waived this immunity "under circumstances in which the state agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state. Fla. Stat. § 768.28(1). Nonetheless, "even if the claim contained sufficient allegations of tort liability under which a private person would be liable, the waiver of sovereign immunity would still not apply if the challenged acts of the state agent were 'discretionary' governmental acts rather than merely 'operational' ones." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir.2001). Therefore, Sheriff Prummell may only be held liable for the alleged negligent actions specified above if they constitute an operational act, as opposed to a discretionary act. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla*., 402 F.3d 1092, 1117 (11th Cir. 2005) ("basic judgmental or discretionary governmental functions are immune from legal action, whereas operational acts are not protected by sovereign immunity." *quoting Pollock v. Fla. Dep't of Highway Patrol,* 882 So.2d 928, 933 (Fla. 2004)(citation omitted)).

While claims based on negligent training have generally been found to be discretionary governmental function, *see Lewis v. City of St. Petersburg*, 260 F.3d at 1266, more than one Florida court has explicitly held ". . . there is no sovereign immunity barrier to making a claim against a governmental agency for negligent retention or

supervision." *Dickinson v. Gonzalez,* 839 So.2d 709, 713 (Fla. 3d DCA 2003); *see also Willis v. Dade County School Bd.,* 411 So.2d 245, 246 (Fla. 3d DCA 1982).

The Court finds at this stage of the litigation, Sheriff Prummell is not entitled to sovereign immunity. The Amended Complaint contains allegations that Ireland was owed a duty by Sheriff Prummell and hiring, firing, (*i.e.* retention) and supervision is not necessarily an immune activity. Further, Plaintiff attributes liability to Sheriff Prummell under a theory of *respondeat superior* for the acts of his deputies.

Accordingly, it is now

**ORDERED:**

1. Defendants Corizon, Health, Inc., Adamar Gonzalez-Figueroa, Zackary Heavener, and Margaret Bracy's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 32) is **DENIED.**

2. Defendants Carter, Swartzentruber, Wiles, Sledzinski, Schwocho, Garlick, and Burrows' Motion to Dismiss Count V of Amended Complaint (Doc. 31) is **DENIED**.

3. Defendant Michael Burnette's Motion to Dismiss (Doc. 29) is **DENIED**.

4. Defendant Sheriff's Motion to Dismiss Counts IV of VI of Amended Complaint (Doc. 30) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 17th day of August 2018.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record